UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TRUSTEES OF THE TEAMSTERS LOCAL 631 SECURITY FUND FOR SOUTHERN NEVADA, <br><br>　　　　Plaintiffs, <br><br>　v. <br><br>DAWN POLSON, an individual, <br><br>　　　　Defendant. | 02:11-CV-00924-LRH-VCF <br><br> ORDER |

Before the court are two motions for summary judgment. Plaintiffs Trustees of the Teamsters Local 631 Security Fund for Southern Nevada ("Trustees") have filed a Motion for Summary Judgment on their single claim (#15[1]), Defendant Dawn Polson ("Polson") has responded (#19), and Trustees have replied (#23). Polson has filed her own Motion for Summary Judgment (#14), to which Trustees have responded (#16), and Polson has replied (#22).

I.   **Facts and Procedural History**

Plaintiffs Trustees run an employment benefit plan for unionized workers, which is regulated under the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461 ("ERISA"). (Complaint (#1), ¶ 2.) The benefit plan was created following an agreement between the International

---

[1] Refers to the court's docket number.

Brotherhood of Teamsters Local 631–the union–and employers that have executed collective bargaining agreements with the union. (*Id.*)

One of these employers was Elite Expo Services, Inc. ("Elite"), a now-dissolved Nevada corporation.[2] (*Id.* at ¶ 3.) Under the terms of the benefit plan agreement, Elite was required to pay monthly contributions to the benefit plan. (Plaintiffs' Motion for Summary Judgment ("MSJ") (#15), Ex. 3 at 31-32; Ex. 4 at 38; Ex. 5 at 44-45; *see also id.*, Ex. 6 at Art. 3 § 9.) However, a May 2008 audit revealed that Elite had failed to pay contributions in the amount of $6,764 between December 2003 and September 2007. (*Id.* at Ex. 8.[3])

Defendant Polson worked for Elite during this time period. (*Id.* at Ex. 11, p. 2.) Polson prepared remittance reports and signed checks to the benefit plan on behalf of Elite from December 2003 until September 2007. (*Id.*) Polson was listed as an Elite officer with Nevada's Secretary of State in 2002, 2006, and 2007 (and possibly 2004). (Defendant's MSJ (#14) at Ex. E.) During the delinquency period, however, Larry Dean Riggs was the president and owner of Elite. (*Id.*)

Polson bought Elite from Riggs in January 2008, and Polson was the sole officer of Elite during the May 2008 audit. (*Id.*) When Elite failed to respond to demands for payment following this audit, Trustees sued Elite on May 25, 2010. (Plaintiff's MSJ (#15) at ¶ 8.) Elite also failed to respond to Trustees' Complaint, and the court entered a default judgment against Elite in the amount of $33,854. (*Id.* at ¶ 9.)

Trustees now claim that Polson was a fiduciary of the benefit plan under ERISA, and that Polson breached her fiduciary duty when she failed to pay the delinquent contributions. (Complaint (#1) at ¶¶ 18-19.) As a result of this breach, Trustees allege, Polson is personally liable for the delinquent amount plus interest, liquidated damages, and attorneys' fees. (*Id.* at ¶ 20.)

---

[2] Elite was dissolved in July 2010. (Defendant's Motion for Summary Judgment (#14), p. 4:9.)

[3] This amount includes unpaid "Medical", "Dental/Vision, and "Trainee" contributions, but it excludes unpaid "Retiree" contributions. (Plaintiffs' MSJ (#15) at Ex. 8; *id.* at 3 n. 1.)

2

## II.     Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983).  A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.  The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252. Finally, where–as here–both sides have moved for summary judgment, the court must consider evidence submitted in support of both motions before ruling

on either motion. *See Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

**III.     Discussion**

Under ERISA, fiduciaries of benefit plans may be personally liable for any loss to the benefit plan resulting from a breach of their fiduciary duties. 29 U.S.C. § 1109(a). A "fiduciary" within ERISA's usage is, in part, one who "exercises any authority or control regarding management or disposition of the plan's assets." 29 U.S.C. § 1002(21)(A). The term "assets" is not defined in ERISA. *Trustees of S. California Pipe Trades Health & Welfare Trust Fund v. Temecula Mechanical., Inc.*, 438 F. Supp. 2d 1156, 1162 (C.D. Cal. 2006).

"[B]ecause a fiduciary is one who exercises authority over the management or disposition of plan 'assets,' a defendant's fiduciary status in cases concerning delinquent contributions often turns on whether the term 'assets' includes such delinquent contributions." *Trustees of the National Elevator Pension Funds v. Lutyk,* 140 F. Supp. 2d 407, 410 (E.D. Pa. 2001) (citation omitted). The general rule is that it does not: employer contributions do not become assets of the plan until disbursed. *Cline v. Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000). However, where the plan document expressly considers unpaid contributions as plan assets, courts (including this one) have recognized an exception to the general rule. *See Trustees of Electric Workers Health & Welfare Trust v. Campbell*, 2010 WL 582553, *3 (D. Nev. Feb. 11, 2010); *see also Temecula Mechanical, Inc.*, 438 F. Supp 2d at 1167; *Lutyk*, 104 F. Supp.at 410-11. These courts have found the following language sufficient to trigger the exception: whether the plan assets include sums "due and owing," sums that "shall be paid," sums for which an employer is "immediately liable," and sums that "become [plan] assets on the Due Date," *See Trustees of the Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust for S. Nevada v. Granite Works, Inc.*, 2011 WL 3159099 (D. Nev. July 26, 2011) (collecting cases). On the other hand, an unadorned reference to "contributions" as plan assets does not trigger the unpaid employer contribution exception. *Id*.

4

1    Here, Trustess have not shown that the plan document considers unpaid contributions to be
2 "assets." The plan document defines "Trust Fund" as "all of the assets of whatever kind which, from time
3 to time, comprise the trust estate of this trust." (Plaintiffs' MSJ (#15) at Ex. 6, Art. I § 12.) This definition
4 is even more general–and therefore less likely to trigger the exception–than a definition including only
5 "contributions" as plan assets. *See In re Halpin*, 566 F.3d 286, 290 (2d Cir.2009). Moreover, where the
6 plan document does address delinquent contributions, it provides that such contributions are "due and
7 payable" following the twentieth day after the original contribution due date. (Plaintiffs' MSJ (#15) at Ex.
8 6, Art. III § 3; Amendment 2.) In other words, employers are not "immediately liable" for unpaid
9 contributions; rather, they are liable following a twenty-day grace period. Since a plan's "assets" are to be
10 determined following "ordinary notions of property rights under non-ERISA law," this grace period is not
11 consistent with a scheme in which plan assets include unpaid employer contributions. *See Campbell*,
12 2010 WL 582553 at *3.

13    Trustees have failed to demonstrate as a matter of law that plan "assets" include unpaid employer
14 contributions. *See Welles v. Turner Entertainment Co.*, 503 F.3d 728, 738 (9th Cir. 2007) (noting that
15 contract interpretation is a question of law where, as here, no extrinsic evidence is introduced in support
16 of a favored interpretation). Therefore, their claim fails. Without plan assets to control, Polson cannot be
17 an ERISA fiduciary; and if she cannot be an ERISA fiduciary, she cannot breach any fiduciary duties.

**IV.   Conclusion**

   For the foregoing reasons, the court concludes that summary judgment is appropriate.

   IT IS THEREFORE ORDERED that Plaintiffs' Motion for Summary Judgment (#15) is DENIED.

///
///
///
///

5

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment (#14) is GRANTED. The Clerk of the Court is directed to enter final judgment in favor of Defendant and against Plaintiffs.

IT IS SO ORDERED.

DATED this 29th day of October, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE